UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

**WISCONSIN ELECTRIC POWER COMPANY,**

    **Plaintiff,**

              v.                            Case No. 06-C-0515

**UNION PACIFIC RAILROAD COMPANY,**

    **Defendant.**

---

## RULE 7.4 EXPEDITED NON-DISPOSITIVE MOTION OF WISCONSIN ELECTRIC POWER COMPANY TO COMPEL UNION PACIFIC RAILROAD COMPANY'S DISCOVERY RESPONSES

Pursuant to Federal Rule of Civil Procedure 37(a)(2) and Civil L.R. 7.4 and 37.1, Plaintiff Wisconsin Electric Power Company ("WEPCO") hereby moves for an expedited order compelling defendant Union Pacific Railroad Company ("UP") to produce computerized revenue waybill records for rail traffic that moved over the UP lines used to transport WEPCO's Colorado to Chicago during the year 2002, as requested by WEPCO in its Second Request for Production of Documents served on March 7, 2007 and attached to the affidavit of WEPCO counsel Christopher A. Mills as Exhibit A.[1]

WEPCO and UP entered into a contract for coal transportation to WEPCO's power plants for the period January 1, 1999, through December 31, 2005 ("the 1999 Agreement"). *See* Complaint, Exhibit 1. WEPCO's Complaint initiating this case was filed on April 25, 2006. In its Complaint, WEPCO seeks damages for breach of contract resulting from: (1) UP's refusal to apply reduced "backhaul" rates to shipments of coal under the 1999 Agreement between May 1, 2004 and November 30, 2005; (2) UP's failure to provide sufficient railcars and locomotives to enable WEPCO to transport

---

[1] On May 16, 2007, WEPCO filed a Rule 7.4 Expedited Motion to Compel numerous UP discovery responses, which was denied by the court on May 31, 2007. WEPCO now files an expedited motion regarding the 2002 waybill data only.

its declared tonnages from 2003-2005; and (3) UP's conscious decision to divert its railcars and locomotives to other customers in 2003-2005, thereby breaching its duty to make good faith reasonable efforts to meet WEPCO's monthly shipping schedules pursuant to Article VI.B of the 1999 Agreement and depriving WEPCO of the benefits of its bargain under the contract.

Under the Federal Rules of Civil Procedure, the scope of discovery is broad and all information that is relevant, non-privileged, and is reasonably calculated to lead to admissible evidence should be disclosed by the parties. The Rules specifically provide that a party such as WEPCO is entitled to discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ." Fed.R.Civ.P. 26(b)(1).

WEPCO requested UP's computerized revenue waybill records for all traffic that traverses any portion of the rail lines used by UP to transport Colorado coal to WEPCO and to other destinations located east of Denver for 2002-2005. These records are needed in conjunction with UP's train and car movement records for the years 2002-2005, which UP has agreed to produce, to ascertain the specific traffic changes on the lines in question during this period and the revenues (and profitability) attributable thereto. UP has refused to provide the requested revenue waybill data for 2002. *See* Exhibits B and C to the Counsel's Affidavit attached hereto.

WEPCO has requested production of the 2002 waybill data (for coal and non-coal traffic) so that it will have a base year that will permit it to make meaningful traffic and revenue comparisons with the years at issue in this case, 2003-2005. WEPCO plans to use the waybill data to evaluate and identify any changes that occurred in UP's traffic that used the lines used to transport WEPCO's coal to Chicago from the 2002 base

2

period to the years 2003-2005. The analysis will include a review of information such as the growth in UP traffic, identification of the railcars and other equipment (including ownership thereof) used by UP to transport traffic for other customers, and an evaluation of the profitability of UP shipments by customer. WEPCO's analysis will also use the 2002 data as a basis for evaluating UP's marketing practices and the effect that those practices have had on the shortfalls in coal transportation to WEPCO in 2003-2005. The analysis may reveal evidence pertaining to UP's financial incentives for making the service and equipment allocation decisions that it did during the time that UP was failing to meet its obligations to WEPCO under the 1999 Agreement.

As indicated above and in Exhibit B to the attached Counsel's Affidavit, UP has agreed to produce car and train movement data for the years 2002-2005. WEPCO will use that data to analyze the trends in UP's allocation of its track space and equipment (cars and locomotives) to both coal and non-coal traffic it has moved on the routes used to serve WEPCO during that time period. In order to complete a comprehensive analysis of traffic and revenue for all of these years, however, WEPCO must *also* have access to the 2002 waybill data, in addition to the 2003-2005 waybill data which UP has agreed to produce. Without a base year of waybill data (as well as car/train movement data) to work with, WEPCO cannot perform a complete assessment of the actual trends in UP's traffic and revenue distribution for Colorado coal during the period in issue in this case.

WEPCO requests that the Court expedite its consideration of this Motion and order UP to produce the 2002 revenue waybill data within 30 days of the date of its order granting this Motion.

Dated: June 18, 2007.

3

**ATTORNEYS FOR PLAINTIFF,
WISCONSIN ELECTRIC POWER COMPANY**

<u>   s/Shannon A. Allen   </u>
Matthew W. O'Neill (Bar No. 1019269)
Shannon A. Allen (Bar No. 1024558)
FRIEBERT, FINERTY & ST. JOHN, S.C..
Two Plaza east – Suite 1250
330 East Kilbourn Avenue
Milwaukee, Wisconsin 53202
Tel: (414) 271-0130
Fax: (414) 272-8191
E-mail:  mwo@ffsj.com
E-mail:  saa@ffsj.com

Christopher A. Mills
Frank J. Pergolizzi
SLOVER & LOFTUS
1224 Seventeenth Street, N.W.
Washington, D.C.  20036
Tel: (202) 347-7170
Fax: (202) 347-3619
E-mail:  cam@sloverandloftus.com
E-mail:  fjp@sloverandloftus.com