UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

WISCONSIN ELECTRIC POWER COMPANY,

    Plaintiff,

v.

                                    Case No. 2:06-CV-00515-RTR

UNION PACIFIC RAILROAD COMPANY,

    Defendant.

## DECLARATION OF CRAIG M. LEFF

Declarant Craig M. Leff states as follows:

1.     I am one of the attorneys of record in the above-captioned matter representing Defendant Union Pacific Railroad Company ("UP").

2.     Exhibits 2a through 2d contain a summary of costs and supporting documentation for the depositions of witnesses taken in this case, including charges for the court reporter, the cost of the transcript, and the cost of videotaping the depositions.

3.     Each of these depositions was reasonably necessary for use in the case. With a few exceptions, the depositions taken were of present or former UP or WEPCO employees who were identified as having information relevant to the case. The remaining depositions were of third-party witnesses associated with either Oxbow Mining, WEPCO's coal supplier, or KCBX Terminal Company, WEPCO's transloading agent. Because the Oxbow and KCBX witnesses were located beyond the Court's subpoena power, UP's only opportunity to present the testimony of these witnesses at trial was via deposition.

4.     Also itemized on Exhibit 2a are the fees for witnesses, including appearance fees and mileage reimbursement. Included in these costs are the travel expenses of Jeffrey Koch, a

**EXHIBIT 1**

former UP employee whose deposition was requested by WEPCO. Mr. Koch, who now resides in the Seattle, Washington metropolitan area, agreed to travel to Chicago, Illinois for his deposition. His doing so allowed WEPCO's counsel to take both Mr. Koch's deposition and the deposition of former UP employee Michael Paras in one day in Chicago, Illinois. Mr. Koch's agreement to travel to Chicago for his deposition substantially decreased the costs incurred by WEPCO, including the travel expenses and attorneys' fees that WEPCO would have incurred had Mr. Koch required WEPCO's counsel to travel to Seattle from Washington, D.C. UP reimbursed Mr. Koch for his travel expenses, including air transportation, ground transportation, hotel, and meals, and is now seeking to include these amounts as costs pursuant to Civil Local Rule 54.2(c). The total of these charges is **$1,025.49**. See Exhibit 2a.

5. Also included in these costs are fees for two subpoenas served on third parties Oxbow Mining and KCBX Terminal Company. These subpoenas were necessary to compel the production of documents sought by UP.

6. UP also incurred substantial expenses associated with the copying of documents it obtained for use in the case. The majority of these documents were obtained by UP and produced to WEPCO directly in response to one or more of the more than 30 separate requests for production of documents served by WEPCO.

7. Consistent with an understanding with WEPCO's counsel, UP produced nearly all of its documents in electronic format, either in native format, or through images of the original documents. In nearly all instances, documents, including electronic files, were produced to WEPCO through an electronic storage medium, either a CD-ROM, DVD-ROM, or in one case, an external hard drive.

8. In connection with its document retrieval and production, UP engaged the services of a third-party vendor, Focus Solutions ("Focus"). Attached as Exhibits 3a through 3c

are receipts from Focus substantiating UP's request for the costs of copies of documents UP obtained for use in the case, which include documents that UP produced to WEPCO either voluntarily or in response to WEPCO's various requests for production of documents.

9. The total charges for Focus that UP is seeking to recover are **$74,992.27**, as detailed below.

10. **Charges for the imaging and production of documents retrieved by UP in hard copy.** These costs represent the amount UP spent to scan documents that it retrieved from various document custodians in hard format. These charges are the material equivalent of the photocopying charges that UP would have incurred to copy the documents for itself and to produce these documents to WEPCO, though by scanning the documents and saving them electronically, UP was actually able to reduce the duplicate charges it would have incurred to make one copy of each document for itself and another for production to WEPCO. UP scanned 6,437 documents with a total of 15,948 pages with an average cost per page of $1.02. The total cost for scanning was **$16,262.14**.

11. **Charges for the retrieval, processing, and production of electronic documents.** The majority of documents produced by UP were obtained from electronic sources. The charges associated with this "electronic discovery" reflect the costs for processing the electronic data that UP gathered from emails, and attachments to emails, local hard drives, shared network hard drives, and other electronic databases. These data were then uploaded and put into a format that would allow the electronic data to be reviewed and later produced to WEPCO. UP was charged for these services at the rate of $1,000 per gigabyte of data processed. The total number of electronic documents processed by Focus was 39,897. Because approximately 27,475 of the electronic files were produced in both the present case and another case then pending against UP in Arkansas state court, UP is seeking recovery of the charges

associated with only one half of these documents, which reduction is reflected in the 39,897 figure. The total amount sought by UP for the retrieval and processing of electronic documents is **$35,897**.

12. **Costs associated with the upload of documents produced by WEPCO and third parties.** WEPCO, like UP, produced most of its documents electronically, either in native format or as image files created from documents that had been scanned. Likewise, a third party, Oxbow Mining, made its production in electronic format as well. Rather than printing copies of each of these documents, UP uploaded the documents to a centrally located electronic database. The uploading of documents to this database was in lieu of making paper copies of the documents produced. Focus processed a total of 2,304 documents consisting of 12,448 separate pages for a total cost of **$4,773.06**, based on an average per-page cost of $.38 per page.

13. **Production costs.** In order to produce the documents to WEPCO, the documents that had been retrieved were given unique bates numbers, then burned to an electronic storage medium. When a production request was submitted, Focus exported the documents out of the database and converted the native documents identified to be produced as a ".tif" image. Focus also provide a single no-print page to represent the documents produced in native format, which would include the bates number and "confidential" or "highly confidential" designation. Focus then produced everything pursuant to the production protocols, namely single-page ".tifs" for the paper, e-mails, word documents, and excel, powerpoint, txt, avi and jpegs to be produced as native documents in Summation format with a .dii file for loading and a .txt file with the document range and the designation. UP produced 79,163 files or images, at an average cost of $.23 per image/file, for a total of **$18,331.84**.

14. Notably, there are several expenses that UP incurred that it is not attempting to recover as costs from WEPCO. These include:

a. The substantial monthly hosting charges that UP incurred to maintain the database of documents maintained by Focus. The database contained documents for the WEPCO case and other pending matters, making allocation of costs unique to WEPCO difficult;

b. Charges that UP incurred for adding users to the electronic database;

c. Scanning and upload charges for documents that UP had previously retrieved, scanned and uploaded in connection with prior judicial or administrative matters, but that were included in the production of documents to WEPCO;

d. The substantial time and expense UP incurred in searching for and producing electronic data requested by WEPCO, including UP's car and train movement data.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct.

Craig M. Leff

S:\554\pldgs\Costs\Declaration of CML in support of costs.doc